The next case will be agenda number 8, number 130595, People of the State of Illinois v. James Reed. Counsel, are you prepared to proceed? May it please the court. Counsel, I'm Joel Flaxman. I represent James Reed. After Mr. Reed's unconstitutional conviction was vacated, he sought a Certificate of Innocence. Under subsection B of the Certificate of Innocence statute, he requested a certificate finding that the petitioner was innocent of all offenses for which he was incarcerated. There's no dispute that Mr. Reed satisfies that language. The only offense for which he was incarcerated is a void, an aggravated unlawful use of a weapon offense. Nevertheless, the trial court denied Mr. Reed's petition because Mr. Reed did not show he was innocent of other charges in the original information, charges for which he was neither convicted or incarcerated. The state had dismissed those charges by Nali Perseki. The question for the court is whether the state may oppose Mr. Reed's request for a Certificate of Innocence by arguing that he was not innocent of charges other than the offense of incarceration. The court should hold that the state may not oppose the certificate on those grounds and that the circuit court's inquiry is limited to the offenses of incarceration. The brief that we submitted has several reasons, so I'm supporting that argument. I want to start with the language of the statute. As I stated at the beginning, subsection B of the Certificate of Innocence statute tells us what a petitioner shall request. So it's a mandatory requirement that limits the scope of the proceeding and it limits it to offenses of incarceration. So the rule that the state argues and that the lower courts adopted requiring a showing beyond offenses of incarceration is not permitted by subsection B. The petitioner is not allowed to ask for relief on any other convictions. Counsel, what about the evidentiary burden that your client would have in this instance and that would be under G3? Right. What is your client required to prove? Right, so subsection G3 requires a showing that the petitioner is innocent of the offenses in the indictment or information. It doesn't say all offenses. Well, the offenses in the indictment or information, are you suggesting that means that does not include all of the offenses charged in the indictment or information? That's correct. That subsection B tells us what the offenses means. It means the offenses of incarceration. So we look to subsection B to determine what subsection G3 means? That's right, and that we assume that the legislature meant the same thing when it used the same language. So because it said the offenses in both places, the offenses of incarceration is what G3 is about. Another way of looking at it is that subsection B limits subsection G3. A case we heard about earlier, People v. Fair, about the Torture Commission Act. The question before the court was whether when a case is referred to the circuit court for consideration, does that mean that the circuit court considers the whole case? And this court in People v. Fair said no, because the purpose of the act is this torture claim and the language from other parts of the act limit for consideration to that torture claim. And it's the same argument here, that the provisions of the act that limit offenses to offenses of incarceration also limits subsection G3 when it refers to that same frame. A different way of looking at it is to consider what the effect of dismissing a charge by Nali Perseki is. What we know is that Nali Perseki is an abandonment of a charge. The state has voluntarily given formal notice that it's not going to go forward on that charge. And what the cases say is that once a charge is dismissed by Nali Perseki, it's no longer part of the charging instrument. So... Counsel, how is your analysis in the position you're taking impacted by the Palmer case? So the Palmer case is, in our position, adopts exactly the rule that we're asking for. In the Palmer case, the state sought to oppose a petition for a certificate of innocence by relying on a theory of guilt that had never been presented in the original trial. So something that was not charged in the indictment or information. Well, I don't think Palmer is that narrow. That the accountability... Well, was it in Palmer? Was it something that was charged in the indictment or the information? Yes. Murder under accountability theory was a charge that the state could have gone forward with under the original information. Did they charge him with that? They charged him with murder in the original information, and under Illinois case law, they could have prosecuted him under an accountability theory. So they didn't charge under an accountability theory? I don't agree with that. I'm asking. Yeah, the charge, the language of the charge did not state an accountability theory. But what case law from this court and Illinois courts say is that they could have prosecuted under an accountability theory. And so the key point in Palmer was that that theory that was never prosecuted in the original case. And that's what we have here, that the charges the state dismissed by Nollie Persecchi were never prosecuted in the original case. In this instance, is it being suggested that your client has to disprove an allegation on a theory that was not charged or concluded in the indictment? No. So the state is relying on charges that were in the original indictment. And in Palmer, the state's argument was a charge of murder, even if it would say accountability in the charging document, can be prosecuted under accountability. And the state, so the state's argument was, because we could have gone forward with that prosecution, it was in the charging instrument. And that's the holding of Palmer is that the court considers the offense as it was charged in the indictment, that resulted in the criminal conviction. And that focus on conviction is another part of the rule that we're arguing for today, that charges for which the petitioner was never convicted simply aren't relevant to the court's consideration of the certificate of innocence. The reading of subsection G3 as modified by subsection B is consistent with the canon of construction that the court doesn't consider provisions in isolation. And subsection H, which mirrors the language of subsection B, says what the court can award. It says that if the court finds the petitioner entitled to judgment, it enters a certificate that's limited to offenses of incarceration. Those provisions don't serve any purpose if the petitioner has to make some showing beyond offenses of incarceration. Another rule of statutory construction is that the court has to consider the consequences of construing a statute one way or the other. Under that rule, I want to invite the court to give due consideration to the amicus brief that was filed by four exonerees, who each served over a decade of wrongful imprisonment before being exonerated. In each of those cases, there was, there were, there were other charges in the original indictment for which the exoneree was never convicted or incarcerated. As an example, in the Palmer case, he had been convicted of a murder that was later overturned. He was originally charged with a burglary that actually occurred the day before and found not guilty of that burglary at trial. Counsel? Yes. How does your position support the policy of the Act? So that's the purpose, is compensation for wrongful imprisonment. And it's our position that requiring a showing on a charge for which the petitioner was never wrongfully incarcerated or incarcerated at all has no connection to that purpose of the statute. That in tort law, we typically look to see or typically expect to see some connection between the injury and the recovery. So whatever the compensation is has to be commensurate to the injury that the plaintiff in a tort case suffered. So there wouldn't be any reason to consider something that never injured the plaintiff in a tort case. Counsel, why would the legislature write the statute that way? Why would they write innocent of the offenses charged if they really meant innocent of the offenses for which the petitioner was incarcerated? I mean, those are two different things. Do you think the legislature was confused or they didn't know how to write the statute with clarity? So subsection G3 has two different parts. The first part that we've been talking about is about the offenses that were charged. The second part is about the acts or omissions. So there's a separate path that a petitioner could follow that wouldn't look at what's written in the charging instrument, but would look at the acts or omissions that were charged. That would be something like where, for example, the First Amendment holding that whatever the conduct charge was couldn't possibly be criminalized. But that's why I think it refers to the indictment or information. So although they wrote innocent of the offenses charged, they didn't really mean that. They meant any offenses that were in the indictment, even if the incarceration didn't include those particular charges. Well, the state's position is that they meant every single charge in the charging document. Our position is that there was nothing confusing about what the legislature was writing, that they, in subsection B, in subsection A, in other sections, they expressly stated that the interest of the act is in offenses of incarceration. That's the scope of the act. For the offenses that were charged. Well, the scope of the act is the offenses of incarceration, and that other offenses charged are not relevant to whether the petitioner was. Where does it say that? Subsection B says that the petitioner has to request a certificate of innocence, finding innocence of all offenses for which he or she was incarcerated. So the state's rule that he has to request a finding of innocence on charges for which he was not incarcerated is not permitted by the statute. So that if you read the statute to require showing of all charges, you have this inconsistency between the subsections of the statute. But subsection G3 does include language as it relates to the burden of the petitioner, and that language says you have to demonstrate that you're not more innocent of all offenses charged in the information or indictment. So that's what G3 says, right? The word all does not appear in G3. Well, let's look at exactly what it says. Why don't you show he is innocent of the offenses charged in the indictment for information, right? That's what it says. And our position is that when the court reads the statute as a whole, the limitation from subsection B and H to offenses for which he or she was incarcerated applies to G3. So that, what Your Honor just read, the offenses charged in indictment or information for which he or she was incarcerated. But G3 doesn't speak to for which he or she was incarcerated. Right. When one part of the statute modifies another part of the statute, that language doesn't get repeated. And that's exactly what the court found unfair when it considered the word consideration of the case and said, that doesn't mean the circuit court considers the whole case. Other parts of the statute modify that section and limit it to the claim of torture. At the time of a plea or a trial when the state has nallied charges, are those charges pending at the time of the plea or the hearing? Those charges are not pending. And that's another way that the court, I mean, if the court accepts an all-charges rule, what the court should hold is that Mr. Reed is still entitled to the certificate. Because when those charges are dismissed by nalling prosecute, they're no longer part of the charging history. That this court's holding in the Hughes case tells us that there's two ways that the state can bring back those charges. They can file a new indictment or information, or they can move to vacate the nally and reinstate the charges. The court shouldn't adopt a new rule that says, well, they can still rely on those charges to oppose a certificate of innocence. The counsel, even if they were nallied, they were charged, correct? They were charged. Another puzzle that the all-charges rule presents is what happens when a charge is amended. So that if Mr. Reed, if one of the charges were changed from, say, well, I think it would be more likely in some other kinds of offenses, but from a manufacturer delivered to a possession charge. That was amended, and then he was found guilty. Later, that charge was vacated, and he seeks a certificate of innocence. Does he have to prove the charge as originally charged? Is the one that he's innocent of it, or is it the amended one? I don't think it would make a lot of sense if we had to go back to the original charging document. Another puzzle that the state's all-charges rule presents is when we have indictments or information with multiple defendants. I don't think it would make a lot of sense to require a petitioner for a certificate of innocence to prove the innocence of a completely different person. But if we require innocence on all charges in the charging instrument, that's what they'd be required to prove. What do we do about the statute of limitations problem? If there were charges that were nallied, and then, of course, it takes a long time for process to take place in terms of actual innocence. Probably the statute of limitations have run on all those other charges, right? That's true in this case, yes. And under the court's opinion in Chennault, the state can't bring back these charges. I think we would. And so I don't think that's a reason for the court to adopt a different kind of rule. I think that's just how our system works, that after a certain amount of time passes, the state can't bring back those charges. So here in a plea situation, this is a plea situation, and obviously there was negotiation that took place, and the statement of determination to accept a plea as to one count and nally the others. Everybody should understand that in the future, those other charges will never be able to be brought back, right? That's how a plea, yes. Yes, and I think the statute of limitations is interesting to think about how it could have played out in Palmer, that the court said the state couldn't rely on this new theory in the certificate of innocence proceeding. But I don't think there would have been any argument against the state proceeding on that if they wanted to retry Mr. Palmer. And here it's something different where they can't bring it back because of the statute of limitations. I see that my time is running out, and besides if there are other questions about G3, I'm happy to answer them. I did just want to mention subsection G4, which is a provision the state has raised for the first time before this court. That provision requires the petitioner did not voluntarily cause or bring about his conviction. Our position is that it's not possible to voluntarily cause a void conviction. This was an unconstitutional statute that was void ad initio, meaning from the beginning. So I mentioned the Chennault case, the court referred to a plea in that case as being defective. Under contract law, which we apply to plea bargains, a party can't voluntarily enter into a void contract. And that's exactly what we have here. The court actually adopted this rule in Washington when it endorsed the third district's holding in People v. McClinton. So there's no reason for the court to change course on that ruling about subsection G4. If there are no questions, I will end there and wait for the rebuttal and ask the court to reverse the judgments below and remand for entry of the certificate of innocence. Thank you very much, counsel. Counsel, if they have leave. Good morning, Your Honors. Counselor. Please, the court assistant attorney general, Garson Fisher for the people. Justice Cunningham and Calder White, I think each of you in your questions, my friend touched on the most notable component of his arguments, which is that they don't rely principally on the plain language of subsection G3. Because as in every statutory interpretation case, the best indicator of the General Assembly's intent here is the plain language of the statute given its ordinary meaning. Subsection G3 unambiguously requires the petitioner to prove by preponderance of the evidence that he is innocent of the offenses charged in the indictment or information. Here, the offenses charged included not only the pre-Aguilar version of aggravated unlawful use of a weapon to which the petitioner pleaded guilty, but also aggravated unlawful use of a weapon for carrying a firearm in public without a FOIA card, offenses which the parties agreed to drop as part of that negotiated plea agreement. Because the language of that subsection is unambiguous and because there's no question that petitioner has not proved he was innocent, in fact, it's undisputed that he did commit the offense of AUW no FOIA card, the circuit court properly denied the certificate of innocence and this court's analysis need actually go no further. Having said that, there are a couple of my friend's arguments that do warrant a more fulsome response. He is correct, this court interprets the statute looking at the statute as a whole. But the fact that the General Assembly used other language in subsections B and H, the offenses for which he was incarcerated when it intended to limit the scope of the certificate of innocence to those offenses, shows that it knew exactly how to limit the relevant offenses to the offenses for which he was incarcerated when that's what it intended to do. In subsection G3, where it set the evidentiary burden that a petitioner must meet in order to obtain a certificate of innocence, it did not use that language. It used a totally different language. The offense is charged in the indictment or information. So looking at the statute as a whole actually supports the plain language interpretation, which is, again, unambiguous whether you look at just G3 or whether you look at the statute as a whole, that a petitioner must prove he is innocent of the offenses charged, not just the offenses for which he was incarcerated. And the fact that the entire statute talks about actually a language, but uses incarcerated, the charges that, right? The statute itself uses the title, talks about incarceration, doesn't break this down as to what was in the information or not. It does not, Your Honor. And in fact, this case shows why the statutory scheme as a whole actually does make sense. The injury to which one is entitled to compensation in the court of claims is the wrongful incarceration. But the General Assembly didn't want to provide a certificate of innocence to every petitioner who had their conviction overturned. They wanted to limit certificates of innocence to those who were innocent of the offenses with which they were charged. There is no wrongful incarceration in the sense that the certificate of innocence statute is remedying petitioners for in a case like this one, where he unquestionably or at least cannot show that he was innocent of valid offenses with which he was charged. And they could have chosen to strike a different balance, to be sure. They could have chosen to strike the balance that my friend and the amici wish they had chosen, which is to require him only to show he was innocent of the offenses for which he was incarcerated. They could have gone the other direction, too, as some states have done, and required him to show not only that he was innocent of the offenses charged, but also that he was innocent of any offense that could have been charged based on his alleged conduct. They didn't choose either of those paths. The unambiguous language of G3 tells us exactly which path they chose, which is to require him to show he was innocent of the offenses charged. And to the extent that my friend and the amici assert that that produces some unfair results, that's an argument to be made to the General Assembly. But they can't litigate instead of legislating and ask this court to rewrite the statute when the plain language of the statute, given its ordinary meaning, is unambiguous. I'd also like to address the question of the effect of the dismissal of the aggravated unlawful use of a weapon, no FOID card charge. As Your Honor noted, it was charged. The fact that it was later dismissed doesn't mean it wasn't charged. The easiest way to see what the offenses charged in the indictment or information were is to read the indictment or information. Now, to be sure, for purposes of things like double jeopardy and the effect of the statutory limitations period, when a charge is null, it can't just revive the original charging instrument. But that doesn't mean that it wasn't an offense that was charged. And even if there might be a closer question, were this a unilateral no-lay, you know, you asked about the effect of the holding in People v. Palmer. What the court held there was that we look at the indictment that resulted in the conviction. Perhaps once the state chooses to no-lay a charge during the process of the criminal proceedings, the indictment that resulted in the conviction no longer includes that unilaterally no-laying charge. But to Justice O'Brien's point, when you have an agreed negotiated guilty plea like this one, where the parties agree to dismiss the charge, at the time he pleaded guilty, AUUW no FOID card was still a pending charge. It was dismissed as part of that negotiated agreement. It was only upon his guilty plea to the pre-agilar version of AUUW that AUUW no FOID card was no longer a part of this case. And as this court recently held, when you have that kind of negotiated agreement, the technical means by which the other charges are dismissed is not what's important. So in a case like this one, where the petitioner committed still valid offenses that were charged in the indictment or information, his obligation is to prove that he was innocent of those charges, even if he entered into a negotiated plea agreement in which those other charges were subsequently dropped. How does that satisfy the purpose of the statute when we're talking about wrongful incarceration? So, Your Honor, you're right. The principal purpose of this statute was to remove technical obstacles to relief for those who were wrongfully incarcerated, who are entitled to a certificate of innocence. And you wouldn't consider this a technical obstacle? No, Your Honor. What this is is a charge that he did commit that is a still valid charge, which goes to show that he was not in the sense that the certificate of innocence in the statute is talking about it wrongfully incarcerated. Because the General Assembly didn't simply say everyone who has their convictions vacated gets a certificate of innocence. Or even everyone who has their convictions vacated on an actual innocence claim gets a certificate of innocence. They set an evidentiary burden. And that evidentiary burden that they set was that he had to prove he was innocent of the offenses charged. And again, my friend the amici can argue to the General Assembly that they should strike a different balance. But they can't ask this Court to rewrite the statute that the General Assembly wrote with exactly that legislative purpose in mind. I will touch quickly on subsection G4 to be sure I think the easiest way to resolve this case is with Petitioner's failure to demonstrate his innocence of I have a follow-up question. In subsections B and D there seems to be a conflict regarding the petition itself. And in B it says the petition shall request a certificate of innocence finding that the Petitioner was innocent of all the offenses for which he or she was incarcerated. And then in D it talks about the facts sufficient to permit the Court to find about the Petitioner's likely to succeed at trial. And it's there I know where you said they have to prove all of the innocence of all of the charges in the indictment. But that seems to be in conflict with B. Can you explain your feeling on that? Yeah, I don't think they're in conflict, Your Honor. D says the scope of the petition that is being the certificate that the Petitioner is seeking. He's seeking a certificate of innocence for the offenses on which he was actually incarcerated. But because his evidentiary burden is going to be under subsection G to show his innocence of the offenses charged the pleading requirement would also be that he present facts to support his innocence of the offenses charged. There's nothing inconsistent with the scope of the eventual certificate not being identical to the facts that have to be proven in order to meet the Petitioner's evidentiary burden. The scope of the certificate is defined by the harm for which the Petitioner seeking relief is wrongful incarceration. The burden is set to ensure that that relief remedy is only available to those who are actually innocent of all of the criminal charges that were brought against them. And that actually goes to why the burden under G4 exists in a case like this one as well. What this court held in Washington is that there's just a sort of case-by-case totality of the circumstances type of analysis to determine whether someone voluntarily brought about their conviction. Here, unlike in Washington, there's no factual basis. There's nothing in the circumstances that suggests that the guilty plea here was not entirely voluntarily. To be sure, one cannot voluntarily bring about their conviction by engaging in constitutionally protected conduct, which is what the court was getting at in McClinton and in the dicta in Washington, endorsed in McClinton, I think this court was talking about. But that doesn't mean that where someone engages in what is not constitutionally protected conduct, the unlicensed carriage of firearms, that the fact that they voluntarily enter into a negotiated plea agreement that happens to land on an offense that is subsequently struck down means that under the totality of the circumstances, their conduct was not voluntary. They did not voluntarily bring about their conviction. And my friend is correct. The petitioner's failure to meet his evidentiary burden under subsection G4 is not something that came up in the lower courts where the court held that he was not entitled to a certificate of innocence because of his failure to satisfy his burden under G3. Of course, the people can't simply forfeit away a petitioner's evidentiary burden. He still has to satisfy his evidentiary burden. And as just came up in the prior case this morning, of course, the state's position that a petitioner is not entitled to a certificate of innocence has met his evidentiary burden, has been consistent throughout, even though we've identified an additional basis on which he has not met that burden. Unless the court has further questions, we would ask that this court affirm the judgment of the appellate court, which affirmed the denial of a certificate of innocence. Thank you very much. Thank you, Your Honors. Counselor Lafley, interply. The key point I want to present is that the state's argument about the legislative intent is the same one that it made to the court in Palmer, which was that because Mr. Palmer was not innocent of some other charge, under another theory, he was not entitled to a certificate of innocence. And the court did not accept that in Palmer. We might want to ask the court not to accept it here, that the focus of the statute is imprisonment. And the state tells the court that there is this difference between the scope of the certificate you get and the evidentiary burden to get it. I'm not aware of other statutes that have something similar. And I think that we assume that the legislature is legislating against the background of tort law and is acting in a way that's not absurd. I think I mentioned this before, that it wouldn't make any sense for a plaintiff in a tort case to have to prove something about some facts that didn't cause that plaintiff an injury. The only other pitch I'll make is to, again, ask the court to look at the exonerees amicus brief. I think that really points out why this is a technical obstacle, not just to Mr. Reed, but to other petitioners. Finally, on subsection G4, the state admits that it's a void plea because he was convicted of an unconstitutional conviction. We don't see how the presence of the other charges for which he wasn't convicted change, whether it was voluntary or whether it was a void plea. Unless there are other questions, I thank the court for your time. Thank you very much.